So now I'll call the case of United States v. Bell, Ervin Bell. Hello? Yes, I was hoping to call the case of United States v. Ervin Bell, III. I apologize. I had my phone muted, Your Honor. I think sleep comes first. My name is Donna Duncan, Counsel for Appellant Ervin Bell, III. And may I begin, Your Honor? You may. Thank you. And we'll give you two minutes of uninterrupted argument before we start questioning you. Thank you. In this case, the District Court clearly erred in its factual findings as to the weight of the drugs attributed to Mr. Bell. There was not sufficient evidence offered at sentencing to meet the required burden of proof by a preponderance of the evidence. The standard of review before this Court today is clearly erroneous, which is a very deferential standard. However, it is not bulletproof. The sentencing record must establish the facts required to support the sentence. The finding of fact, which is the weight attributable to Mr. Bell, must be supported by substantial evidence. This Court should find in favor of Mr. Bell, vacate his sentence, and remand for plenary resentencing. In a case such as this, where the actual amount of drugs seized does not reflect the scale of the offense, we look to the United States Sentencing Guidelines, 2D11, and that requires the Court to approximate the quantity of the controlled substance. The guidelines suggest that the Court is to look at things as the price, financial or other records, similar transactions, and anecdotal evidence in regards to personal property living beyond the means. It doesn't explain the flow of the extra monies. This Court in U.S. v. Lawrence established the guide for considering weight. This Court specifically said that a prosecutor's proffer is not sufficient, and that testimony by a defendant about weight is acceptable, but that Mr. Bell would have been required to be able to test the veracity, cross-examine, and try to bring doubt to the testimony. Such has happened in this specific case. When the Court looks at Rule 11 proffers to the government, then the defendant, Mr. Bell, would be required to have the opportunity to rebut any evidence provided through the proffer testimony, would be able to try to cast doubt on any of the right liability of the information. The Court also discusses the large amounts of cash, the inference that can be drawn from finding large amounts of cash on the defendant in regards to a search. Bottom line, the record must contain evidence to support the attributable weight, and credible evidence of the number of transactions, the amount of drugs in the transaction. In this case, Your Honors, this record simply does not provide substantial evidence to support a finding of at least 840 grams of cocaine base, which was attributed to Mr. Bell in finding his level 32 for his sentence of 188 months. Ms. Duncan, I went through the stipulated facts supporting the plea agreement that your client signed, and I totaled all of the cocaine powder that was either purchased through controlled buys, recovered after abandonment, or seized during execution of the search warrant on his home. And by my calculations, your client agreed in that document to about 1,754 grams in total. Am I missing something here? Your Honor, you're referring to the statement of facts? Yes, in support of his plea, which he signed. Yes, Your Honor, but in the record, the statement of facts was addressed by the court when Mr. Bell made his objection in the record and stated that he objected to the attributable weight of 840 grams, and the court took note at that point in its document 147, pages 11 and 12, where it was stated that the statement of facts was the government's version of what occurred. So Mr. Bell's objection at that point was clear that he was objecting to the amounts even attributed in the statement of facts. But why couldn't the district court find that those amounts were in furtherance of and reasonably foreseeable to Bell based on the Pinkerton Doctrine and his plea to the conspiracy counsel? I believe that the court could not attribute in that manner because of Mr. Bell's objection and his clear objection that he just simply did not agree to the government's version of the facts and that his plea was to the elements of the facts, but not to the element of the crime, but not to the weight that the government was attributing. But if he agreed that that's what the government's evidence would show, isn't that substantial evidence when we're applying a clearly erroneous standard to support the district court's factual findings? Your Honor, I do not think it is in this circumstance in which the objection was clear that he was admitting to the elements of the crime, his actions, but he just simply from the very beginning did not agree with the weight attributed. I do not think it's sufficient in that circumstance. Can I ask you, this is Beverly Martin, so the government seems to agree that the district court only found Mr. Bell responsible for the crack cocaine, not any of the powder. Is that right? I mean, do you agree with that, that Judge Hinkle just calculated your client's sentence based on the crack and not the powder? No, Your Honor, I do not agree with that. If you look to the record, there was very little discussion at all in regards to Defendant Young and what his proffer was. Officer Stinson spoke a lot about what he was told by Benerson, which was the co-defendant, and what he was told by fellow officers or what he read in proffers. So I do not agree with the government's position that the judge calculated Mr. Young's statements, because in fact, Judge Hinkle on the record stated that he was rejecting the statements of the co-defendants based on credibility because they were not there for any type of veracity to be judged. And was he referring to Mr. Young as one of those co-defendants that he was rejecting the statements of? Yes, Your Honor, and I believe he was also referring to an unnamed co-defendant that made some comments about Mr. Bell's actions as well. So there was two named co-defendants and one unnamed co-defendant that was very briefly mentioned by Mr. Stinson in the record. I apologize for trying to find that location in the record. It seemed to me this had kind of a surprise ending. As I was reading the transcript, it seemed like Judge Hinkle was rejecting this testimony and then ended up including it in the amount. So, I mean, I don't know if it felt that way in person or not. Yes, Your Honor, in fact it did, and that was basically the kernel that we boiled this down to was that he rejected the government's argument as presented for a level 34, but he didn't accept Mr. Bell's statements when he accepted responsibility for approximately a level 30. But if you disregard all of Stinson's testimony about the co-defendants and the proffers, what are you left with? Even if we look at the physical evidence that Stinson gave an historical account about, it's still not sufficient. So that is the bottom line for us is if the government's testimony and evidence presented was not sufficient for a 34, then it's not sufficient for a 32 either because you're left with nothing that satisfies the preponderance of the evidence burden. So how did you get, or how did I guess it was prior counsel, get to conceive that a level 30 would be appropriate? That was prior counsel. What that was based on was Mr. Bell's proffer. Mr. Bell did eventually cooperate. He did receive acceptance of responsibility, and in his proffer he stated the amount that he trafficked weekly, and that amount added up to approximately a level 30. And Mr. Bell conceded that, but the government argued against that based on they wanted to minimize Mr. Bell's proffer and say, well, he was being honest about certain things, but he was minimizing the quantity, and our reply brief addressed that, that acceptance of responsibility speaks for itself. Veracity is a part of being able to receive that three-level dam or departure, but it's Mr. Bell's statements himself that lead to that level 30, Your Honor. Okay. Any further questions at this point? Not from me. So we will give you your time for rebuttal. Okay. Mr. Davies? Good morning. This is Robert Davies for the United States, Your Honors. Good morning. May it please the Court. The district court did not clearly err by finding Bell responsible for at least 840 grams of cocaine base. The district court did not accept Benerson's hearsay statement. The district court did accept Young's hearsay statement, at least to the point that the district court found Bell responsible for 840 grams of cocaine base. Those findings were proper and should be affirmed. And Judge Martin, you ask about this, and I think Ms. Duncan answered you incorrectly. The district court rejected Benerson's hearsay statement. Judge Hinkle accepted Young's hearsay statement. That's how he got 84 grams of crack cocaine. And if you all haven't done this already, I would encourage you to please read the sentencing transcript at pages 5-11 and 48-52, and also the PSR at paragraph 56. That really boils this whole case down. I mean, that's my position is what's right there. What's right there is sufficient evidence for the district court to make its findings, and the district court making sufficient findings. That's why you should affirm the district court. I'm sorry. I think I cut you off at the two minutes. Go ahead. I'm sorry. Okay. I was going to say, unlike Benerson's statement, which the district court rejected, Young's statement was corroborated in a number of ways, five ways. Young's statement was corroborated by investigators and confidential sources seeing Young at the Gulf Terrace Drivehouse on almost a daily basis. Young's statement was corroborated by Young's ability to identify Bell's supplier and customers, and that's at pages 8-11 of the sentencing transcript. Young identified the source of supply and numerous buyers by name. Young's statement was corroborated by Bell's own admission that he had known Young for years and trusted Young to run things while he was at his legitimate job. Fourth, Young's statement was also corroborated by the fact that it directly inculpated himself as well as Bell, and fifth, Young's statement was corroborated by the fact that the district court held Young himself responsible for 255 grams of cocaine base. Another important point here is the fact that Young's selling approximately 7.5 grams of cocaine base a day for Bell from the beginning of 2014 through May of 2016 amounts to over 6 kilograms of cocaine base, but the district court only found Bell responsible for at least 840 grams of cocaine base. That's a reasonable... Mr. Davies, this is Beverly Martin. Of course, I did sentencings for 10 years and relied on hearsay in most of them, but this does seem kind of striking to me where the physical evidence seized from Mr. Bell just doesn't match up to the hearsay testimony that was presented by the officer here. And, of course, we didn't have any direct evidence from Mr. Young, but, I mean, the only... As I understand, the only evidence about crack cocaine attributed to Mr. Bell came from Mr. Young, right? Yes, just to be clear, there was a statement of Mr. Benerson, which the district court rejected, so that's out. There was a statement from Mr. Young, which Judge Hinkle accepted, and that's what I'm relying on. That's where you get the 840 grams of cocaine base. But, I mean, it's just not consistent with what they ever found on Mr. Bell. They didn't find anything to corroborate this kind of fantastic income Mr. Bell was supposed to be generating from this drug business that he had. It seems striking to me in that way, and, indeed, Judge Hinkle talked about that. I'm just not going to... That conclusion is not going to cut any weight with me unless there are underlying facts to support it. And, you know, there just were not any instances where the government found Mr. Bell in possession of the kind of amounts Mr. Young testified or told the agent about. Let me address that, Your Honor, because I think there's a clear answer to that. What you're saying really goes to the allegation that Bell was responsible for 50 kilograms of cocaine, which the district court did not accept. The district court rejected that. The lack of finding money doesn't invalidate the finding that Bell was responsible for 2.5 kilograms of crack over a two-year period. That 2.5 kilograms of crack over two years equates to money a drug dealer could easily spend. And there was testimony that Bell went on trips and cruises, that he went gambling, that he bought several vehicles for his family. That's at pages 39 to 40 of the sentencing transcript. Plus, the evidence was that witnesses said that Bell had money where he lived. And where he lived was different than the Gulf Paris drive house that he sold drugs from and where the search took place. You don't have probable cause to execute a search warrant there, but yet you want us to find it reliable about what all was going on there. I don't think that's right. I'm not saying that, Your Honor. What I'm saying is you've got a witness, Young, that says that the district court only held him responsible for 840 grams of cocaine. So you've got a witness that the district court says, I find this defendant sold 840 grams of cocaine over two years. That's not much money at all. I mean, that's money you could easily spend. And like I said, there was evidence he spent it. And you're saying we didn't find drugs. I mean, that happens all the time. He was selling drugs as he got them. In fact, what they found was 116 grams of cocaine at the house. And that's consistent with someone that's getting cocaine and selling it in the quantities that Judge Hinkle found him responsible for. I'm not asking you to accept what we presented at the sentencing hearing. Judge Hinkle rejected that. He just held 840 grams of crack over two years, Your Honor. And finding 116 grams of crack when you do a search is certainly consistent with 840 grams over two years. And the evidence about the defendant spending money on trips, cruises, gambling, and buying vehicles is consistent with 840 grams of crack over two years. So where are you, you know, I mean, I basically did your job before I met Judge Tallman in 2000. But so, I mean, when you rely on hearsay at a sentencing, you have to talk about the indicia of reliability. So you've got Young talking about, you know, Mr. Bell was making $120,000 a month. I'm sorry, Your Honor. Go ahead. I'm sorry. Did I not get that right? I think that's Mr. Benerson when he's coming up with that. That's the 50 kilograms. Look, if I was trying to defend 50 kilograms of cocaine, which is what our trial attorney originally went with, I'd be in a lot of trouble. But Judge Hinkle already said we were in a lot of trouble on that, and he rejected that. What did Young say about Bell's income? Young did not testify or Young did not make a statement about Bell's income. That Young was selling crack cocaine out of the house, the Gulf Terrace Drive house, and that Young would sell about a cookie a day for him. And we have evidence that a cookie weighed about 7.5 grams. So if you do that over two years, you're at 6 kilograms of crack. And, again, Judge Hinkle, though, didn't find him responsible for 6 kilograms. He said 840 grams. What kind of money would that generate, just going on what Young says? I mean, that would be about 840 grams of crack. A kilo of crack, the profit from that would be about $25,000, maybe, give or take, a few thousand. Over two years, Your Honor. You said 7 grams a week. Is that what you said? No, a day. What Young said was he sold a cookie a day for two and a half years. If you add that up, that will get you to 6,700 grams of crack. But, Judge Hinkle, that's not what you have to affirm. I'm asking you to affirm the district court, obviously. Judge Hinkle found 840 grams of crack over two years. That's $20,000, $30,000 in profit. That's easily money someone could spend. I hear you. My point is, if you're going to rely on Young's testimony about one thing, you have to evaluate what he said about other things in coming up with these indicia of reliability for the hearsay that's being presented by the government. I think what he's saying is reasonable. Even if it was 6 kilograms over two years, that's about $50,000 of profit. That's easily money he could burn through, especially when you've got the evidence that he's buying cars, that he went gambling, taking trips and cruises. I think, like I said at the beginning of this, if you read the transcript portions in the PSR paragraph 56 that I mentioned, you do have the five indicia of reliability. I think this case is in line with Docampo and Baptiste. You've got the statement. Here's my problem with that. Both cases went to trial, right? Yep. Here you don't have any trial testimony. All you've got is the hearsay. In those cases, the judge had heard these witnesses at trial. Your Honor, I think if you look at those cases, you'll see that's not completely. It's sort of correct about Baptiste. Docampo, the hearsay declarant, did not testify. The hearsay declarant, Docampo, was Lorenzo's girlfriend. She never testified. That's who the hearsay declarant was. Lorenzo testified at trial that his girlfriend said such-and-such. Then at the sentencing hearing, you had an agent testify that the girlfriend said such-and-such. The girlfriend never testified even at trial. Baptiste, the lady, the hearsay declarant, Francese Cherry, testified at trial, but she didn't testify to the hearsay declaration that was used to impose the obstruction of justice enhancement. I really think, Your Honor, the Baptiste Court also says at page 1315 of the opinion, quoting Williams v. New York, that judges should consider all pertinent information when imposing a sentence, and they aren't restricted to the rules of evidence that govern trials. That's well-settled law. You all know that. But I think if you look at the way Judge Hankel acted and ruled in this case, rejecting Benerson's statement, he's taking care of all the things you're worrying about. He's saying, I'm not going with this 50 kilos of crack. I'm rejecting the government down the line, except I'm going to accept Young's statement for 840 grams. And Young's statement does have corroboration. That is right in line with what a district court is supposed to do. It's exactly how it's supposed to act, and it's certainly not clear error. I mean, I really think we're okay here if you read through the record and see that Judge Hankel rejected a lot of the stuff that they're really complaining about. His finding was very narrow, and it was correct, and it wasn't clearly erroneous. And I guess that would be the last thing I would say is, at his finding, which is at pages 50 to 52 of the sentencing transcript, he said a judge has to make the best determination he can based on imprecise information to the extent that it's sufficiently reliable. Judge Hankel knows what the standard is. He says, based on that, my finding of drug quantity is the amount I've set out. You can read the whole two pages where I think it's a very good, very clear factual finding. We're under the clearly erroneous standard here. Judge Hankel's got a bit of room under that standard. His drug finding here just wasn't clearly erroneous, because there are things to support Young's statement. I mentioned five of them. One other thing that I didn't have in my brief is what Judge Tallman mentioned. I think the statement of facts also buttresses Judge Hankel's finding. You put it all together, clearly erroneous standard review. Judge Hankel did not clearly err in this case, and I think if you haven't already, if you go through and read the sections I've please asked you to read, I think that you'll see he didn't commit clear error and that you all should affirm him. Thank you. Thank you, Your Honor. Thank you, Your Honor. Donna Duncan for Appellant Irvin Belvis III. May I proceed? You may. The first thing that I would like to bring to Your Honor's attention is on page 51, beginning in line 5 of the sentencing transcript, where Judge Hankel says, I don't doubt that Mr. Stinson has accurately testified to what he was told by the individuals, plural, whose statements he's recounting, but those individuals haven't testified. Then he starts talking about the incentive and cooperation and why it's not something that he can rely on. And the government is calling Young a witness. Young was not a witness. He was one of these individuals whose statements was being recounted by Mr. Stinson. And when the court rejects the credibility of those statements, this court must look at the facts and the record, the evidence that is provided to support the finding of the attributable weight. And there is nothing that Mr. Stinson testified to that was direct knowledge, even his testimony in regards to the other agent who pulled the financial records of Mr. Bell that said nothing was, I can't think of the exact quote, but basically nothing was obvious, nothing was apparent. That's all he said about those things. So for Officer Stinson to be the only witness who's sitting up there and surmising and drawing opinions and repeating facts that were stated by individuals who do have a motive that the court rejected when the court steps back and takes the next level of analysis and trying to find in the record the facts that support the attributable weight, absent Young's statements, absent Benenson's statements, and absent any statements that Stinson testified to by other officers, there is simply nothing there. And that is why a level 32 is not sufficient either. Thank you, Your Honors. Thank you. That concludes our arguments for today. I'm going to reconvene with my colleagues on the panel in about 10 minutes. But for our court session, we are in recess until 11 o'clock tomorrow morning. Thank you. Thank you.